# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

JOSEPHINE M. REYNOLDS,

    Plaintiff,                  CIVIL ACTION NO. 08-10039

    vs.                           DISTRICT JUDGE DAVID M. LAWSON

                              MAGISTRATE JUDGE MONA K. MAJZOUB

COMMISSIONER OF
SOCIAL SECURITY,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

**RECOMMENDATION:** Plaintiff's Motion for Summary Judgment (docket no. 14) should be DENIED, and that of Defendant (docket no. 15) DENIED, and the case remanded for further proceedings consistent with this Report.

\*\*\*

Plaintiff filed an application for Disability and Disability Insurance Benefits and an application for disabled widow's benefits on January 27, 2005. (TR 46-50). Plaintiff alleges that she has been disabled and unable to work since December 17, 2004 due to a fractured right ankle and arthritis of the hands and knees. (TR 46-50, 53, 56, 132). The Social Security Administration denied benefits. (TR 36-41). Plaintiff was represented by counsel at a requested *de novo* hearing held on February 27, 2007 before Administrative Law Judge (ALJ) Michael F. Wilenkin. (TR 16-23, 138-71). The ALJ subsequently found that the claimant was not entitled to a period of disability, Disability Insurance Benefits or disabled widow's benefits because she was not under a disability at any time from December 17, 2004 through the date of the ALJ's April 18, 2007 decision. (TR 23). The Appeals Council declined to review the ALJ's decision and Plaintiff commenced the

instant action for judicial review. (TR 4-6). Plaintiff filed with the Court a request for a reversal of the ALJ's decision in her case and Defendant filed a Motion for Summary Judgment. (Docket no. 14). Plaintiff was represented by counsel at the ALJ hearing, but is not represented by counsel now. The Court will treat Plaintiff's request as a Motion for Summary Judgment. The issue before the Court is whether there is substantial evidence in the record to support the Commissioner's denial of benefits.

Plaintiff was fifty-three years old at the time of the administrative hearing. (TR 20, 140). Plaintiff has a tenth grade education and worked in the past as a grocery store/deli clerk, a baker, a crossing guard and a line grill cook. (TR 87, 142, 143, 166). Plaintiff is a widow and lives by herself. (TR 102). She can drive, but her care giver drives her sometimes. (TR 141-42). Plaintiff suffered a fractured right ankle in an automobile accident on December 17, 2004. (TR 144). She underwent surgery on the ankle approximately twelve days after the accident. (TR 147). Plaintiff used a walker following the surgery. (TR 149). Over a year after the accident and surgery, Plaintiff attended physical therapy. (TR 148-49). Plaintiff used a four-prong cane at the hearing for balance and support. (TR 152).

Plaintiff testified that she is able to walk a block before her ankle starts to hurt and she can walk or stand only a half-hour before the pain becomes intolerable, then she must sit down for a half hour to an hour and a half and elevate her leg before she can stand again. (TR 80, 150-52, 156-57). She testified that if she were to spend all day off her feet, with her feet up, she would not have pain in her ankle. (TR 150). She usually elevates her leg in a recliner, but stated that a footstool would be sufficient. (TR 161). Plaintiff takes aspirin for the ankle pain, which helps "a little." (TR 89, 151). She testified that her orthopedic doctor will not prescribe anything stronger for her pain because of the length of time that has elapsed since her surgery. (TR 89, 151). At the time of the

hearing, Plaintiff had not sought treatment for the ankle for approximately a year. (TR 151). The ALJ did not inquire about why Plaintiff had not had treatment during this time. Plaintiff testified that she had no other medical problems, yet she also testified that she cannot stoop, squat, crouch or get down on her knees and she has arthritis in her knees for which she has not sought treatment. (TR 154). Plaintiff had knee surgery more than ten years before the hearing. (TR 152, 56). The record contains a Disability Report by a state agency interviewer who conducted a face to face interview with Plaintiff. The interviewer reported specific instances in which Plaintiff's appearance and answers to questions lead the interviewer to conclude that "she has more problems than she is aware of." (TR 54).

Plaintiff testified that she can lift and carry about five pounds and can carry a couple of small bags of groceries. (TR 155). She is able to take care of her own household chores and personal needs. (TR 73-74, 87, 153). She takes care of her cat, reads and crochets. (TR 73, 153). Plaintiff's care giver mows the lawn and shovels her walk for her. (TR 162). There is no information in the record regarding why Plaintiff has a "care giver" and this topic was not explored at the hearing. Plaintiff testified that she sometimes sleeps all right, but she sometimes has pain in her ankle and has to turn over to get relief, then she is able to resume sleeping. (TR 153).

Plaintiff testified that her insurance company assigned someone to help her find a job. (TR 158). She has applied for numerous positions including working as a security guard and working in fast food restaurants and has not been offered a position. (TR 158-59, 163). Plaintiff feels she could not return to any of her previous jobs because they are all jobs performed while standing. (TR 160).

**Medical Evidence**

Plaintiff was involved in an automobile accident on December 17, 2004. She fractured her right ankle and suffered bruising of both knees. (TR 102, 108). December 17, 2004 x-rays showed an avulsion fracture of the right ankle medial malleolus that is the tibia and extensive degenerative changes in both the right and left knee with tricompartmental joint space narrowing but no fracture or dislocation. (TR 103, 107). Following the accident Plaintiff took Vicodin for pain and used a walker to ambulate. (TR 100, 109). Plaintiff's physician noted that Plaintiff may return to work on December 20, 2008 without restriction and was ordered to follow up with her orthopedic doctor. (TR 111).

On December 29, 2004 Plaintiff underwent an open reduction with internal fixation for the fracture of the right medial malleolus. (TR 94). On January 10, 2005 James C. Bolz, M.D., completed a state agency Medical Examination Report and noted that Plaintiff was restricted from lifting and carrying, the operation of foot and/or leg controls, and had no tolerance for hours of standing, walking and sitting in a work day. (TR 118). Plaintiff was required to use a walker and her limitations were expected to last more than ninety days. (TR 118).

On February 8, 2005 Dr. Bolz wrote a letter stating that Plaintiff would need to be off work for at least three months due to her surgery, starting from December 29, 2004 and ending April 1, 2005, with the date to be extended based upon the speed of her recovery. (TR 115). On March 10, 2005 Dr. Bolz reported that Plaintiff's dorsiflexion was 5 degrees, plantar flexion was a little restricted at about 20 degrees and she had a edema in the lower extremity. (TR 114). The doctor prescribed physical therapy. (TR 114). Dr. Bolz noted that Plaintiff could be fully weight bearing as tolerated and did not have to use the walker. (TR 114). On April 21, 2005 Dr. Bolz noted that

Plaintiff was having medial pain and x-rays showed satisfactory positioning of the fracture fragments and internal fixation devices. (TR 113). Plaintiff still had a mild limitation of dorsiflexion and plantar flexion and was a little stiff in inversion/eversion. (TR 113). Plaintiff indicated that she wanted to continue her at home physical therapy. (TR 113). Dr. Bolz noted that Plaintiff could increase her activities as tolerated by pain. (TR 113).

On May 31, 2005 Dr. Bolz wrote a letter "To Whom It May Concern" notifying that Plaintiff had been slow to heal following the December 29, 2004 surgery, was still using a cane to ambulate and could return to work on June 13, 2005 but should wear a high-tide walker for support while at work. (TR 112). On July 15, 2005 Plaintiff was examined by James R. Holmes, M.D., for complaints of right ankle pain. (TR 121-22). Dr. Holmes noted that x-rays showed a possible non-union of the ankle fracture. (TR 122). Dr. Holmes recommended a CT scan or multi-detector to affirm or refute the diagnosis of non-union. (TR 121). The record does not show that this issue was ever resolved.

The record contains physical therapy reports dating from November 7, 2005 to January 16, 2006. (TR 123-30). The reports note that Plaintiff's standing tolerance was only 15 minutes. (TR 123-30). On November 23 and December 16, 2005 the therapist noted that Plaintiff's maximum ambulation was 200 feet and on December 16, 2008 the therapist noted that it was recommended that she use a cane for assistance because her gait was not functionally safe for ambulating. (TR 125, 127). On January 16, 2006 the therapist noted that Plaintiff ambulated 400 feet continuously with a "gait that is stable for level non-slippery surfaces" however, she had a noticeable limp and sway. (TR 123).

5

**Vocational Expert Testimony**

The vocational expert ("VE") testified that Plaintiff's past work as a line grill cook was light unskilled. (TR 166). Her work as a deli clerk included some cooking and was considered light by the vocational report, but would be medium as Plaintiff testified that she performed it. (TR 166). Her work as a baker was medium and semi-skilled. (TR 166). The VE testified that Plaintiff does not have any transferable skills at the sedentary level. (TR 167). The VE testified that Plaintiff, who was closely approaching advanced age, had a tenth grade education, and based upon the past relevant work experience as described and the limitations as described, would not be able to perform her prior work. (TR 167). Plaintiff would be able to perform sedentary jobs and, based on Plaintiff's testimony that she could only lift up to five pounds, which jobs would include that of visual inspector, sorter, packager and assembler numbering 7,000 jobs in the Detroit area and 14,000 in Michigan. (TR 167).

The ALJ then asked the VE to consider the same hypothetical and assume that Plaintiff is capable of lifting as much as twenty pounds occasionally and ten pounds frequently, instead of five pounds. (TR 167). The ALJ included a requirement that Plaintiff be able to change position between sitting and standing at her option during the workday and that, two to three times per day for a short period of time, Plaintiff is able to elevate her foot on a hassock. (TR 167). The VE testified again that Plaintiff would not be able to perform her prior work, but would be able to perform light bench work jobs which allow for a change of positions and elevation. The jobs are similar to the visual inspector, sorter, packager and assembler jobs, but with weights ranging from ten to twenty pounds and would number approximately 12,000 jobs in the Detroit area and 24,000 in Michigan. (TR 168). The VE testified that her testimony is consistent with the Dictionary of

6

Occupational Titles except that the DOT is silent as to the sit-stand option. With respect to the sit/stand option, the VE bases her testimony on her own personal experience. (TR 168). Upon questioning by Plaintiff's attorney the VE testified that if Plaintiff had to lift her leg to waist level for a half hour at a time when Plaintiff was not on break, it would be preclusive of the jobs mentioned. (TR 169-70).

**ADMINISTRATIVE LAW JUDGE'S DETERMINATION:**

The ALJ found that although Plaintiff met the disability insured status requirements through April 18, 2007, had not engaged in substantial gainful activity since December 17, 2004, the alleged onset date, and suffers from status post fracture of the right ankle, a severe impairment, she did not have an impairment or combination of impairments that met or equaled the Listing of Impairments. (TR 19). The ALJ found that Plaintiff could not perform her past relevant work and her non-exertional limitations did not allow her to perform the full range of light work, but concluded that she was capable of performing a significant number of jobs in the economy. (TR 22-23). Therefore she was not suffering from a disability under the Social Security Act. (TR 23).

**STANDARD OF REVIEW:**

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938));

*Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Commissioner*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").

**DISCUSSION AND ANALYSIS:**

Plaintiff's Social Security disability determination was made in accordance with a five step sequential analysis. In the first four steps, Plaintiff was required to show that:

(1)     she was not presently engaged in substantial gainful employment; and

(2)     she suffered from a severe impairment; and

(3)     the impairment met or was medically equal to a "listed impairment;" or

(4)     she did not have the residual functional capacity to perform her relevant past work.

*See* 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f). If Plaintiff's impairments prevented her from doing her past work, the Commissioner, at step five, would consider her residual functional capacity ("RFC"), age, education and past work experience to determine if she could perform other work.

If she could not, she would be deemed disabled. *See* 20 C.F.R. §§ 404.1520(g), 416.920(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualification to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id.* (citations omitted).

**Plaintiff's Request For Reversal Of The ALJ's Decision**

Plaintiff did not specifically challenge the steps of the ALJ's findings. In her request for a reversal, Plaintiff only generally argues that the ALJ's decision is in error and addresses the severity of her ankle pain and her limitations. Generally, any issues not specifically presented to the Court would be waived. *See, e.g., McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997). However, the Court is charged with the duty to determine whether an ALJ's findings are supported by substantial evidence and whether that ALJ employed the proper legal standards. *Walters*, 127 F.3d at 528. Part of that duty, at least in this case, is to determine if substantial evidence supports the ALJ's determinations. Because Plaintiff has raised the issue of her limitations and the severity of her ankle condition and leg pain in her request, the Court will consider steps three, four and five of the ALJ's decision.

**New Evidence**

In her Request for a Reversal dated April 7, 2008, Plaintiff states that she cannot walk due to constant pain in her ankle, that she has pins in her ankle and sores on her left leg with constant

swelling. She states that she cannot stand on her leg for fifteen minutes or she has trouble. She cannot climb stairs and driving is very difficult for her. Her care giver assists her with cleaning the house, washing clothes and driving Plaintiff to doctor's appointments. Plaintiff states that she wears a "shoe boot" constantly and walks with a cane. The other new information provided by Plaintiff is an Employee Change Notice form from Centennial Healthcare dated January 8, 2007 which indicates only that Plaintiff was "discharged" and the reason given is "unable to perform job duties [sic] with training employee after 4 days of training." (TR 137).

"[E]vidence submitted to the Appeals Council after the ALJ's decision cannot be considered part of the record for purposes of substantial evidence review." *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). "The district court can, however, remand the case for further administrative proceedings in light of the evidence, if a claimant shows that the evidence is new and material, and that there was good cause for not presenting it in the prior proceeding." *Id*. "[T]he burden of showing that a remand is appropriate is on the claimant." *Id*. Evidence is new if it was "not in existence or available to the claimant at the time of the administrative proceeding." *Id*. The "evidence is 'material' only if there is 'a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence.'" *Id*. To show good cause, a claimant must demonstrate "a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ." *Id*. (citations omitted). "Evidence of a subsequent deterioration or change in condition after the administrative hearing is deemed immaterial." *Wyatt v. Sec'y of Health and Human Servs.*, 974 F.2d 680, 685 (6th Cir. 1992) citing *Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 712 (6th Cir. 1988).

Plaintiff's statements in her request do not provide new evidence. The record already

contains evidence that she can only stand for 15 minutes, even though her testimony was that she could stand or walk for 30 minutes. (TR 123-30). At best, this statement only evidences a change in condition after the administrative hearing. The remainder of the statements in Plaintiff's Request to Reverse (docket no. 14) does not provide new evidence and is consistent with her prior statements. The Centennial Healthcare form evidence is not material. It does not address Plaintiff's medical conditions and gives no further explanation for Plaintiff being unable to perform job duties. The Court will neither consider Plaintiff's statement and the form, nor remand the claim pursuant to 42 U.S.C. § 405(g).

**The ALJ's Step Three Finding**

As the ALJ indicated in his written opinion, the ALJ found that Plaintiff has a status post fracture of right ankle impairment. (TR 19). Plaintiff's ankle condition falls under the listing for Category of Impairments, Musculoskeletal, Listing 1.01, Major dysfunction of a joint(s) (due to any cause) or Listing 1.02, Fracture of the femur, tibia, pelvis, or one or more of the tarsal bones. With respect to Plaintiff's ankle condition, each listing requires that the condition result in an inability to ambulate effectively, as defined in 1.00B2b. Listing 1.00B2b provides a definition for the inability to ambulate effectively. One example of ineffective ambulation is "the inability to walk a block at a reasonable pace on rough or uneven surfaces." Listing 1.00B2b(2).

Plaintiff has the burden of demonstrating that her impairment meets or equals a listed impairment. *Foster v Halter*, 279 F.3d 348, 354 (6th Cir. 2001) ("A claimant must demonstrate that her impairment satisfies the diagnostic description for the listed impairment in order to be found disabled thereunder"). The ALJ relied on Plaintiff's testimony at the hearing that she could walk a block and could walk for a half-hour. (TR 20, 152). The ALJ also cited physical therapy notes

from January 16, 2006 which report that Plaintiff can ambulate 400 feet continuously with "gait that is stable for level non-slippery surfaces." (TR 123). Plaintiff has not shown that she has an inability to ambulate effectively as defined in the Listing. Further, the medical evidence of record does not definitively show nonunion of Plaintiff's ankle fracture, although Dr. Holmes raised the issue in a report dated July 15, 2005. (TR 121-22). Dr. Bolz's reports from 2005 contemplate a return to work, even with use of a high-tide walker at work. (TR 112). The ALJ's decision at step three was supported by substantial evidence and there is simply insufficient evidence to find otherwise.

**Plaintiff's Residual Functional Capacity And The ALJ's Findings At Steps Four and Five**

The ALJ determined that Plaintiff has the RFC to

Perform work activities that allow her to sit six of eight hours, stand and/or walk two of eight hours with the option of sitting and/or standing at her will and the necessity of two to three times during the work day to elevate her right foot to hassock level and the ability to lift and/or carry up to twenty pounds occasionally and ten pounds frequently. (TR 19).

The record contains restrictions that were issued following Plaintiff's ankle surgery. On a January 10, 2005 state agency Medical Examination Report, Dr. Bolz noted that Plaintiff's ankle fracture was in a cast and was non-weight bearing. (TR 117). He indicated that she should not lift and/or carry weights or operate feet and leg controls, but she was unlimited in using her upper extremities for repetitive action. (TR 118). He noted that the limitations were expected to last from 90 to 180 days and the cast would remain for 6 to 8 weeks. (TR 118). On April 21, 2005 Dr. Bolz opined that Plaintiff could increase her activity as tolerated by her pain. (TR 113). He did not note limitations. (TR 113). On May 31, 2005 Dr. Bolz stated that Plaintiff may return to work on June 13, 2005 but should use a high-tide walker for support while at work.

Plaintiff testified that she needs to sit after thirty minutes of standing or walking. The ALJ

12

incorporated a sit-stand option into the RFC for work performed sitting for six hours per day. Further, the ALJ incorporated Plaintiff's need to raise her foot to relieve pain; Plaintiff testified that raising it on a foot stool would be sufficient. (TR 161).

The record contains an allegation by Plaintiff that she can only lift 5 pounds. (TR 155). In spite of Plaintiff's testimony, the ALJ concluded that Plaintiff can lift up to 20 pounds occasionally and 10 pounds frequently. There is no reference to evidence which supports this conclusion or an explanation for finding a greater exertional ability than 5 pounds. To the extent that the ALJ may have concluded that Plaintiff's testimony on this point was not credible, the ALJ must explain this conclusion[1]. The ALJ found that Plaintiff's statements regarding the limiting effects of her symptoms were not entirely credible. However the ALJ did not go into further detail regarding which of the statements was not credible and why. The ALJ pointed out only generally that plaintiff is able to engage in housework, care for her pet and care for her personal needs. (TR 20). The ALJ also pointed out that at the time of the hearing she was treating her pain with only aspirin, and she

---

[1] The ALJ's conclusions regarding credibility should be accorded deference and should not be discarded lightly because the ALJ has the opportunity to observe the demeanor of a witness. *See Casey v. Sec'y of Health and Human Servs.*, 987 F.2d 1230, 1234 (6th Cir. 1993). A finding that a claimant is not credible must be supported by substantial evidence in the same manner as any other ultimate factual determination. To the extent that the ALJ found that Plaintiff's statements are not substantiated by the objective medical evidence in the record, the Regulations explicitly provide that "we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work . . . solely because the available objective medical evidence does not substantiate your statements." 20 C.F.R. § 416.929(c)(2). In addition to objective medical evidence, the ALJ must consider: (1) the claimant's daily activities, (2) the location, duration, frequency, and intensity of claimant's pain, (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms, (5) treatment, other than medication, for pain relief, (6) any measures used to relieve the pain, and (7) functional limitations and restrictions due to the pain. *See* 20 C.F.R. § 404.1529(c)(3); *see also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994) (applying these factors).

had no medical records beyond January 16, 2006 to indicate that her condition worsened. (TR 21). However, there is testimony from Plaintiff that her doctor would not prescribe a stronger pain medication, even when she requested it one year after the surgery. (TR 151).

Plaintiff also testified that she cannot stoop, squat, crouch or get down on her knees due to arthritis in her knees. (TR 154). Plaintiff's testimony is consistent with the Function Report dated February 11, 2005 in which she reported that she cannot lift, squat, walk, kneel or climb stairs. (TR 77). Plaintiff's testimony is also consistent with the Disability Report dated February 4, 2005 in which she reported that she had a fractured right ankle and arthritis of the hands and knees. (TR 56). December 17, 2004 x-rays of Plaintiff's knees showed "extensive degenerative changes with tricompartmental joint space narrowing" in each knee. (TR 107). The physical therapy reports indicate that Plaintiff has a functional loss of the ability to squat to the floor. (TR 123-28). The ALJ did not address these alleged limitations in the RFC or his decision. In assessing a claimant's RFC, the ALJ must consider all of the claimant's medically determinable impairments, including those that are not "severe." 20 C.F.R. § 404.1545(a)(2).

There is a lack of complete information in the record from which to determine Plaintiff's functional and exertional limitations. The ALJ's RFC is not supported by substantial evidence. The Court should remand this matter for the ALJ to develop the record, including obtaining further information from Plaintiff's treating physicians or obtaining a state agency medical assessment. *See* 20 C.F.R. § 404.1513.

The ALJ's RFC is not based on substantial evidence, therefore, a new step four and, if necessary, step five determination must be made by the ALJ. Although the ALJ found that Plaintiff had the RFC to perform a limited range of light work, the ALJ referenced the VE's testimony

14

regarding the availability of 7,000 sedentary jobs in southeastern Michigan and 14,000 in the state rather than light jobs. (TR 22, 167). To the extent that the ALJ found that this was a significant number of jobs, the error is harmless because the VE testified to a greater number of jobs available in the range of light work. (TR 168). However, the VE only generally stated that the light exertion jobs were "similar types of jobs" of those she had mentioned with respect to sedentary jobs. On remand, if a new step five determination is made, the ALJ should elicit the titles of the specific jobs available and give the number of jobs available for each.

**RECOMMENDATION:**

The Commissioner's decision is not supported by substantial evidence. Defendant's Motion for Summary Judgment (Docket no. 15) should be DENIED. Plaintiff's Motion for Summary Judgment (Docket no. 14) should be DENIED. The case should be REMANDED back to the Commissioner for further proceedings consistent with this Report.

**REVIEW OF REPORT AND RECOMMENDATION:**

Either party to this action may object to and seek review of this Report and Recommendation, but must act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the *Local Rules of*

*the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: November 13, 2008            s/ Mona K. Majzoub
                                                          MONA K. MAJZOUB
                                                          UNITED STATES MAGISTRATE JUDGE

## PROOF OF SERVICE

I hereby certify that a copy of this Report and Recommendation was served upon Josephine Reynolds and Counsel of Record on this date.

Dated: November 13, 2008            s/ Lisa C. Bartlett
                                                          Courtroom Deputy